**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**DANIEL AZCONA,**

**Plaintiff,**

**v.**

**CHARLES ELLIS, et al.,**

**Defendants.**

**Civil Action No. 20-8526 (FLW)**

**MEMORANDUM OPINION**

Plaintiff Daniel Azcona is currently incarcerated at Camden County Correctional Facility and has submitted a Second Amended Complaint alleging violations of his civil rights and under state law. The gravamen of his Second Amended Complaint (and his prior Complaints) is that he contracted the novel coronavirus disease 2019 ("COVID-19") in May 2020, while incarcerated as a pretrial detainee at Mercer County Correctional Center ("MCCC"), and he seeks to hold Defendant Warden Ellis liable for his injuries.

On December 11, 2020, after granting Plaintiff's application to proceed *in forma pauperis*, the Court construed Plaintiff's Complaint and Amended Complaint together and screened the submissions for dismissal under 28 U.S.C. § 1915(e)(2)(B). *See* ECF No. 26. As relevant here, the Court dismissed the federal claims against Defendant Ellis without prejudice for failure to state a claim for relief and permitted Plaintiff to file a Second Amended Complaint if he could cure the deficiencies in his federal claims against Defendant Ellis. *Id.*

Plaintiff's Second Amended Complaint was docketed on December 30, 2020, and it largely reiterates the allegations in his initial and Amended Complaint. *See* ECF No. 28 ("SAC"). Plaintiff alleges that he was healthy when he arrived at MCCC on April 21, 2020, and that he was "not appropriately quarantined" or tested for COVID-19 upon arrival. *See* SAC at 6-

7. Plaintiff further alleges that he told medical staff that he had asthma and high blood pressure. *See id.* Plaintiff also alleges that Defendant Warden Charles Ellis lied in an April 2020 certification about the number of inmates and/or staff who had tested positive COVID-19 at MCCC, failed to create appropriate testing and quarantine procedures, and "deprived" corrections officers of face masks. *Id.*; *see id.* at 10. Inmates also "did not have proper face masks." *See id.* at 6.

Plaintiff was tested for COVID-19 while housed on Tier 2 North-Left, and he tested positive on May 15, 2020. *Id.* at 6. After testing positive for COVID-19, Plaintiff was placed on South-1-Right Tier, and the unit was filled with inmates who also had COVID-19. *See id.* The conditions in South-1-Right Tier were crowded with "three rows of bunk beds" and there was no social distancing, face masks, or hand sanitizer. *See id.* Plaintiff's COVID-19 symptoms included chills, aches, vomiting, headaches, and weakness. *See id.* at 7.

Plaintiff alleges that he filed grievances about contracting COVID-19 at MCCC, and Defendant Ellis never answered his grievances. *See id.* at 8. Plaintiff refused to be retested for COVID-19 and instead decided to file the instant lawsuit because Defendant Ellis violated his rights under N.J.A.C. 10A:31-14.2 *See id*. at 9. That regulation provides in relevant part that "Inmates shall be protected by adult county correctional facility staff from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment." N.J.A.C. 10A:31–14.2, Protection from abuse.

Plaintiff alleges that he felt like he was going to die at MCCC after contracting COVID-19, and the experience left him traumatized. *Id.* at 8. He alleges that he continues to have headaches and weakness, and remains traumatized by his experience. *See id.* at 10.

The Court construes Plaintiff to assert claims pursuant to 42 U.S.C. § 1983 against Defendant Ellis in his personal capacity.  The Court also liberally construes Plaintiff to assert that his detention at MCCC during the COVID-19 pandemic amounts to unconstitutional punishment and/or that Defendant Warden Ellis failed to protect him from contracting COVID-19 and/or acted with deliberate indifference to Plaintiff's particular vulnerability to COVID-19. Finally, the Court liberally construes Plaintiff to allege that Defendant Ellis created inadequate policies to prevent the spread of COVID at MCCC.

In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty.  *Hubbard v. Taylor* 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*).  The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate governmental purpose." *Hubbard II*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 538).  "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Id.* at 236 (quoting *Bell*, 441 U.S. at 549).  The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d. Cir. 2020) (citing *Hubbard I*, 399 F.3d 150, 159–160 (2005))*; see also*, *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983) (though double-bunking involved cramped, crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space).

In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on "many

privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546; *see also Hope*, 972 F.3d at 326.

As the Supreme Court cautioned in *Bell v. Wolfish*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 540 n. 23 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 584 (1984) (noting the "very limited role that courts should play in the administration of detention facilities").

Here, even assuming the truth of Plaintiff's allegations, he has not stated a claim that his detention in the quarantine unit amounts to punishment. As the court explained in its prior screening Memorandum and Order, the decision to place Plaintiff in a quarantine tier after he contracted COVID-19 does not amount to punishment in light of the obvious need to separate inmates with COVID-19 from other inmates to prevent further spread of the virus. Plaintiff complains that the conditions in the quarantine unit were crowded and that inmates could not practice social distancing and were not provided face masks or hand sanitizer while in the quarantine unit. However, it is not clear how social distancing, face masks, or hand sanitizer would have helped Plaintiff after he contracted COVID-19. Furthermore, in *Hope*, the Third Circuit warned against making "ideal" conditions, such as the ability to socially distance, a "sine qua non of constitutional detention." *Id.* at 327. The Third Circuit reiterated that the "touchstone for the constitutionality of detention is whether conditions of confinement are meant

to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). Here, the facts do not suggest that Defendant Ellis placed Plaintiff in a crowded quarantine unit without face masks and hand sanitizer to punish him or inmates generally; rather, it appears to be a legitimate response to an unprecedented situation undertaken to prevent further spread of the virus. As such, Plaintiff fails to state a claim that his pretrial detention in the quarantine unit amounts to punishment.

Nor has Plaintiff set forth sufficient facts to show that Warden Ellis was deliberately indifferent to his particular vulnerability to COVID-19. Construed liberally, Plaintiff appears to assert that the Defendant Warden Ellis acted with deliberate indifference to his vulnerability to COVID-19. *See Helling v. McKinney*, 509 U.S. 25, 34–35 (1993) (recognizing claim of deliberate indifference of officials to exposure to tobacco smoke that poses unreasonable health risk); see also *Hope*, 972 F.3d at 329 (recognizing immigration detainees' claims of deliberate indifference based on their vulnerabilities to COVID-19 due to their ages or medical conditions); *Palakovic v. Wetzel*, 854 F.3d 209, 224 (3d Cir. 2017) (particular vulnerability to suicide due to mental health conditions); *Natale*, 318 F.3d at 582 (particular vulnerability due to insulin dependent diabetes).

To establish deliberate indifference, Plaintiff must show the particular defendant knew of and disregarded an excessive risk to his health and safety. *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). And although a detainee's particular medical or mental health vulnerability coupled with detention conditions can create a substantial risk of harm, *see Palakovic*, 854 F.3d at 226, deliberate indifference requires significantly more than negligence. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998) and "mere disagreement" as to the response to the risk to a plaintiff in light of their

medical condition will not support constitutional infringement. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

In order to state a claim that Defendant Ellis exhibited deliberate indifference to his medical needs, Plaintiff must do more than show that he told medical staff that he had asthma and high blood pressure, and that he subsequently contracted COVID-19 at MCCC. In *Hope v. Warden*, the Third Circuit rejected the petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate their risk of exposure in order to comply with constitutional mandates. *See* 972 F.3d at 329. Thus, a detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness. *See id.* at 330 (citing *Natale*, 318 F.3d at 582). Plaintiff has not alleged that Defendant Ellis knew in April or May 2020 that Plaintiff had asthma or high blood pressure or that these particular conditions placed him at heightened risk of harm from COVID-19. Nor has Plaintiff alleged that he was denied treatment after he contracted COVID-19 or that Defendant Ellis had any role in denying treatment.

Plaintiff alleges instead that Warden Ellis failed to respond to his grievances about contracting COVID-19 at MCCC. But the failure to respond to grievances does not state a claim for relief under § 1983. *See Mercado v. Ellis*, No. 11–6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiff's only claims against the named defendants are based on their failure to investigate or respond to Plaintiff's letters and grievances); *McKinney v. Prosecutor's Office*, Civ. No. 13–2553, 2014 WL 2574414, at *9 (D.N.J. Jun. 4, 2014) (collecting cases and dismissing claim premised on the failure to respond to grievances). For these reasons, the Court dismisses Plaintiff's federal claims for relief based on deliberate indifference to his vulnerability to COVID-19.

Finally, the Court also liberally construes Plaintiff to assert that Defendant Ellis created deficient policies to prevent the spread of COVID-19 at MCCC. Plaintiff has provided few facts about the protocols in place at MCCC in April-May 2020, other than his vague allegation Defendant Ellis "deprived" corrections officers of masks and that Plaintiff was not tested or quarantined upon his arrival at MCCC. Plaintiff also complains about a lack of social distancing, face masks, and hand sanitizer in the quarantine unit, where he was placed *after* he tested positive for COVID-19. These sparse allegations are insufficient to state a claim against Warden Ellis based on deficient policies.

"[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Construed liberally, Plaintiff asserts that Defendant Ellis employed deficient policies at MCCC in response to the COVID-19 pandemic, but he has not identified a specific policy or policies that Defendant Ellis failed to employ. His allegations Defendant Ellis "deprived" staff of masks and that he was not "appropriately" tested and quarantined are vague at best. Plaintiff also alleges that Defendant Ellis lied about the number of staff and/or inmates who had contracted COVID-19, and this fact, although troubling, does not show that Defendant Ellis employed deficient policies to combat COVID-19 and was deliberately indifferent to the risk presented by those policies. To state a claim for relief, Plaintiff must provide additional facts

about the COVID-19 policies that were in effect in April-May 2020, and provide facts showing that Defendant Ellis was aware of, and indifferent to, the unreasonable risk presented by the COVID-19 policies. Furthermore, he must provide facts showing that his injuries were the result of the deficient policies. Because he has not stated a claim for relief, the Court will dismiss Plaintiff's claims against Defendant Ellis based on his creation of deficient policies. At this time, the Court will provide Plaintiff with the opportunity to submit a Third Amended Complaint regarding his policy claim against Defendant Ellis to the extent he can cure the deficiencies as described above. Plaintiff may submit an Third Amended Complaint within 45 days of the date of the Order accompanying this Memorandum Opinion.

It is possible that Plaintiff also seeks relief under state law for negligence or for the violation of New Jersey regulations. The remaining potential basis for this Court's jurisdiction over Plaintiff's remaining state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc., 983 F.2d at 1284–1285. Having dismissed the federal claims for relief, the Court denies supplemental jurisdiction over any potential state law claims.[1]

The Court has also reviewed Plaintiff's many letters, many of which reiterate the allegations in his Second Amended Complaint, but declines to construe these submissions as supplements to his Second Amended Complaint. Plaintiff may not supplement or amend his Complaint through letters to the Court, and, going forward, he should confine his submissions to properly filed complaints and motions pursuant to the Federal Rules.

The Court will deny the request to appoint counsel, as it has dismissed the federal claims in the Second Amended Complaint and declined supplemental jurisdiction pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B).

For the reasons explained in this Memorandum Opinion, the federal claims brought pursuant to 42 U.S.C. § 1983 in the Second Amended Complaint are dismissed for failure to state a claim for relief pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). The Court denies supplemental jurisdiction over any remaining state law claims, and denies without prejudice Plaintiff's request for counsel. Plaintiff is provided leave to submit a Third Amended Complaint against Defendant Ellis for alleged deficient policies. An appropriate Order follows.

[1] If Plaintiff submits an Amended Complaint that states a federal claim for relief, the Court will consider whether he states any state law claims for relief.

Dated: March 25, 2021

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge